UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JUDY A. FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 3:11 C 01216 |
| | ) Judge Marvin E. Aspen |
| SPRING MEADOWS HEALTH CARE | ) |
| CENTER, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Judy Foster claims that she was terminated from her employment with Defendant Spring Meadows Health Care Center, LLC ("Spring Meadows"), in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"). Presently before us are five motions in limine filed by Spring Meadows in preparation for the upcoming May 14, 2013 trial. For the reasons set forth below, we grant the first, second, fourth, and fifth motions in limine. We grant in part, and deny in part, Spring Meadow's third motion in limine.[1]

## STANDARD OF REVIEW

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. Unites States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 (1984)). "The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures—including motions *in*

---

[1] We also grant Spring Meadow's motion for leave to file a reply brief. (Dkt. No. 52.)

*limine*—in order to narrow the issues remaining for trial and to minimize disruptions at trial."
*U.S. v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *see U.S. v. Huff*, No. 10 CR 73, 2011 WL 4916195, at *1 (E.D. Tenn. Oct. 27, 2011). Because a ruling on a motion in limine is "subject to change as the case unfolds," this ruling constitutes a preliminary determination in preparation for trial. *See Luce*, 469 U.S. at 41, 105 S. Ct. at 163); *U.S. v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). A district court's rulings on in limine motions will be reversed only where the court abuses its discretion, that is, "when it relies on clearly erroneous findings of fact, when it improperly applies the law, or when it employs an erroneous legal standard." *U.S. v. Gunter*, 551 F.3d 472, 483 (6th Cir. 2009); *U.S. v. Cline*, 362 F.3d 343, 348–49 (6th Cir. 2004).

**ANALYSIS**[2]

**I.    Testimony and Evidence Concerning Sara Hughes Dropping a Patient**

In its first motion, Spring Meadows asks that we preclude Foster from introducing any testimony or other evidence that a younger, white certified nursing assistant ("CNA"), Sara Hughes, dropped a patient, resulting in that patient's death. (Dkt. No. 46.) Foster intends to call Hughes as a witness and contends that Hughes' testimony on this issue will be relevant to Foster's claim that she was treated differently than white CNAs employed at Spring Meadows. (Resp. at 1–3.)

As Spring Meadows contends, evidence that Hughes allegedly dropped a Spring Meadows resident is irrelevant to Foster's claim. Foster proceeds with her disparate treatment claims for race and age discrimination using the indirect method, pursuant to *McDonnell*

---

[2] We assume familiarity with the factual and procedural background and will include specific facts only as needed to address the pending motions.

*Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), which enables her to show discrimination in her workplace by comparing herself to other similarly-situated employees outside her protected class who were treated more favorably. *Id.*, 411 U.S. at 802, 93 S. Ct. at 1824; *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004); *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007). As discussed in detail in our summary judgment opinion, we look at several factors when considering whether employees are "similarly-situated," including whether the coworkers "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 412 (6th Cir. 2008); *see Foster v. Spring Meadows Health Care Center, LLC*, No. 11 C 1216, 2013 WL 829363, at *5–9 & nn.7–8 (M.D. Tenn. Mar. 6, 2013).

The problem with Foster's position here is that Hughes is not similarly situated to Foster with respect to this particular conduct: dropping a resident is simply not the same, or comparable to, walking off the job without authorization. Because these incidents are so plainly different, evidence about Hughes dropping a resident would be not probative of Foster's claim. In other words, Spring Meadows' failure to discipline Hughes based on those specific (and unknown)[3] circumstances would not make it more or less probable that Spring Meadows terminated Foster

---

[3] Foster has yet to introduce any admissible evidence on this issue to date. *See, e.g.*, *Foster*, 2013 WL 829363, at *8 n.8. The record does not describe in any reliable manner the circumstances of the alleged incident, the investigation and response, Hughes' employment history, or other factors that may have contributed to Spring Meadows' handling of the situation.

-3-

because of her age and/or race under entirely different circumstances. *See* Fed. R. Evid. 401 (defining relevancy). The jury thus need not assess the circumstances or severity of Hughes' alleged conduct or question the apparent lack of punishment.

Even if this evidence was relevant, its marginal value would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403. While we do not have all of the facts before us, we agree that evidence of a CNA potentially contributing to a patient's death in such a manner could be extremely prejudicial to Spring Meadows. We also find that the introduction of such evidence could easily result in a "mini-trial" about that event, the resident's death, and Spring Meadows' responses as the situation unfolded. Such evidence carries the risk of wasting time, as well as confusing both the issues and the jury. For these reasons, we grant Spring Meadows' first motion. We will not allow testimony or other evidence at trial about Hughes allegedly dropping a resident.

## II. "Me-too" Evidence from Other Victims of Alleged Disparate Treatment

Spring Meadows next argues that we must preclude "me-too" evidence, which here constitutes proposed testimony by employees other than Foster that they suffered or witnessed racial or age discrimination at Spring Meadows. (Dkt. No. 47.) Foster concedes that she cannot ask questions of her proposed witnesses that would ask them to speak beyond their personal knowledge. (Resp. at 3–4.) She contends, however, that she should be permitted to ask the witnesses about their observations of Foster's treatment, "disparities in treatment, and how black employees were treated at Spring Meadows." (*Id.* at 4.)

The Supreme Court has instructed us not to apply a per se rule excluding "me-too"

Case 3:11-cv-01216 Document 67 Filed 04/29/13 Page 4 of 9 PageID #: 878

evidence. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 380–81, 387, 128 S. Ct. 1140, 1143, 1147 (2008); *Griffin v. Finkbeiner*, 689 F.3d 584, 598–600 (6th Cir. 2012); *Brabson v. Ohio*, No. 11 C 399, 2012 WL 5471832, at *5–6 (S.D. Ohio Nov. 9, 2012). "Whether such evidence is relevant is a case-by-case determination that 'depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Griffin*, 689 F.3d at 598 (quoting *Sprint*, 552 U.S. at 388, 128 S. Ct. at 1147); *Geiger v. Pfizer, Inc.*, No. 06 C 636, 2009 WL 1026479, at *8–9 (S.D. Ohio Apr. 15, 2009). Accordingly, we must individually analyze the relevance and prejudice of any proposed "me-too" evidence under Rules 401 and 403. *Sprint*, 552 U.S. at 388, 128 S. Ct. at 1147; *Griffin*, 689 F.3d at 598–600.

Subjected to this analysis, "me-too" evidence is often deemed "unwelcome because it is at best only slightly relevant" yet can be highly prejudicial. *Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 734 (S.D. Ohio 2011); *Brabson*, 2012 WL 5471832, at *5; *Geiger*, 2009 WL 1026479, at *9. Despite the risk of prejudice, "me-too" evidence can be probative and admissible, particularly if it involves "the same actors, reasons, and other circumstances" at issue in the plaintiff's claim. *Geiger*, 2009 WL 1026479, at *9. Put another way, this evidence may be admissible if it "could logically or reasonably be tied to the decision" challenged by the plaintiff. *Schrand v. Fed'l Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988); *Jones*, 823 F. Supp. 2d at 734–35; *Geiger*, 2009 WL 1026479, at *9 (explaining that the plaintiff must tie the employment decision "to the statements or actions testified to by the witnesses").

We agree with Foster that her co-workers may testify about their personal observations about how Foster was treated in their workplace. Our consideration of the motion as to the "me-too" evidence, on the other hand, is hampered by the fact that Foster has not identified any

particular witness, described the witness' anticipated testimony, or specified its relevance.[4]

Foster will not be permitted to introduce "me-too" testimony unless she can logically connect the proposed testimony with Spring Meadow's decision to terminate Foster for leaving work without authorization and without informing her supervisors. Testimony from other employees about unrelated employment actions or incidents—for example, those involving entirely distinct circumstances, reasons, and/or actors—is precluded as both irrelevant and unduly prejudicial. The parties are also advised that we will not allow at trial any testimony that fails to comport fully with the Rules of Evidence, including those rules governing hearsay and personal knowledge.

### III. Evidence of Allegedly Similarly Situated Employees

Spring Meadows next moves for an order precluding evidence that Sara Hughes and Jamie Vokelich are similarly situated to Foster because they were disciplined for violating the absentee control policy. (Dkt. No. 48.) Foster opposes the motion.

Review of our summary judgment opinion quickly resolves this question. In that opinion, we concluded that Hughes and Vokelich are not similarly situated to Foster because Foster was not disciplined for excessive absenteeism. *Foster*, 2013 WL 829363, at *8. We held that Hughes' and Vokelich's conduct was thus distinguishable from Foster's conduct.[5] *Id.*, *see, e.g.*, *Ercegovich*, 154 F.3d at 352 (6th Cir. 1998); *Martin*, 548 F.3d at 411. As with Hughes' alleged dropping of a resident discussed earlier, Spring Meadows' failure to terminate these two

---

[4] Spring Meadows mentions several possible witnesses, based on Foster's discovery responses and the deposition testimony of Barbie Henderson, another CNA at Spring Meadows.

[5] Although we did not and need not rely on it, we also noted in our earlier opinion how absenteeism appears to differ from walking off the job. *Foster*, 2013 WL 829363, at *8 n.7.

-6-

employees based on their violations of a specific and separate absenteeism policy would not make it more or less probable that Spring Meadows terminated Foster because of her age and/or race under the entirely different circumstance of her leaving her shift without authorization. *See* Fed. R. Evid. 401 (defining relevancy). Because Hughes and Vokelich are not similarly situated to Foster on this particular basis, the motion is granted in part.

We deny the motion in part with respect to evidence that Hughes may have been similarly situated to Foster based on her insubordinate conduct. As discussed in our summary judgment opinion, to the extent that Spring Meadows terminated Foster for insubordination, Hughes may qualify as similarly situated due to other incidents in her disciplinary history. *Foster*, 2013 WL 829363, at *8 (describing Hughes' insubordinate conduct and the apparent lack of discipline). We leave it to the jury to determine whether Foster and Hughes are similarly situated on this basis and, if so, what inferences should be drawn from the evidence. *Id.*

**IV. Use of Spring Meadow's Employee Spreadsheet**

In her exhibit list, Foster indicated that she may attempt to introduce at trial a spreadsheet provided by Spring Meadows that lists each employee along with his or her contact information, birthday, gender, ethnicity and job title. Spring Meadows objects to Foster's reliance on this document to establish its racial makeup. (Dkt. No. 49.) For her part, Foster states that she does not intend to use the spreadsheet as statistical evidence. She represents that her only purpose for introducing the document would be to "show the race and/or position of employees not present for trial." (Resp. at 6.)

As Spring Meadows points out, however, there are easier and more appropriate ways to present such evidence than introduction of this spreadsheet, which includes a great deal of

-7-

extraneous, personal information and also covers numerous individuals unconnected to the lawsuit. (*See* Reply at 5.) A witness with personal knowledge could readily testify as to these details. In addition, the parties should consider stipulating to these basic facts, which presumably are not disputed. We therefore grant the motion.

## V.     Barbie Henderson's Testimony

Finally, Spring Meadows asks that we limit the testimony of Barbie Henderson to matters within her personal knowledge. (Dkt. No. 50.) The Rules of Evidence require as much, and Foster does not dispute the motion. (Resp. at 7 (stating that Henderson would provide foundation for her testimony and that Foster would rely on other witnesses for information outside Henderson's personal knowledge).)

Accordingly, the motion is granted. Henderson may testify based on her own personal observations but may not relay hearsay or offer speculation.

## CONCLUSION

We grant Spring Meadow's motion to file a reply brief.  (Dkt. No. 52.)  As set forth above, we grant Spring Meadow's first, second, fourth, and fifth motions in limine.  (Dkt. Nos. 46–47, 49–50.)

We grant Spring Meadow's third motion in limine in part, such that Foster may not present evidence that Hughes and Vokelich are similarly situated to Foster based on their absenteeism.  (Dkt. No. 48.)  That motion is denied in part, however, such that evidence will be allowed should Foster attempt to show that Hughes is similarly situated to Foster based on her insubordinate conduct.

SO ORDERED:

Marvin E. Aspen
United States District Judge

Dated:          Chicago, Illinois
                April 29, 2013