IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| JUDY A. FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 03:11-CV-01216 |
| SPRING MEADOWS HEALTH | ) | |
| CARE CENTER LLC, | ) | Judge ASPEN |
| | ) | |
| Defendant. | ) | JURY DEMAND |
| | ) | |

### REPLY TO PLAINTIFF'S RESPONSES TO MOTIONS IN LIMINE 1, 2, AND 4

Comes now Defendant, by and through counsel, and replies as follows to Plaintiff's Responses to Motions in Limine 1, 2, and 4:

### Motion in Limine #1

Plaintiff's recitation of the facts surrounding the alleged incident involving Sarah Hughes dropping a patient is inaccurate, irrelevant and extremely prejudcial. Notably, Plaintiff has offered no support for her recitation of "facts" in her Response to Motion in Limine #1 and instead appears to be relying exclusively on hearsay. C.f. D.E. 40, Page 17 n.8. Plaintiff's recitation of the facts is especially inaccurate in regards to the manner in which she alleges a Spring Meadows resident was dropped, whether Ms. Hughes violated any policies that were in place at the time, and whether the drop resulted in the patient's death. For example, Sarah Hughes was not attempting to lift a resident without a lift, the resident was immediately taken to the hospital for examination after the incident, and the resident was cleared by medical personnel and returned to Spring Meadows that same night. However, in order to properly prove the

inaccuracy of Plaintiff's characterization of the Sarah Hughes incident, Defendant would be required to present evidence (much of it consisting of protected health information) and conduct a trial-within-a-trial which would necessarily involve expert testimony as to the medical cause of the resident's death.

Furthermore, Sarah Hughes was not similarly situated to Plaintiff in regards to this incident. For example, Ms. Hughes' alleged conduct was not intentional and did not violate any policies or procedures in place at the time. Ms. Foster's conduct in leaving Spring Meadows after her name was not drawn was intentional and the abandonment of patient care is against Spring Meadows policy. The proof Plaintiff proposes on this issue, coupled with the proof that will be required of Defendant to refute the baseless allegations, will do nothing but confuse the jury and will not assist them in determining the ultimate questions presented in this case. Again, proving the lack of relevant similarities would require a trial-within-a-trial.

Finally, as noted in Defendant's Motion in Limine on this topic, Fed. R. Evid. 403 calls for exclusion of this evidence, regardless of the inaccuracies of Plaintiff's account. If nothing else, the evidence will show that Ms. Hughes did in fact drop a resident, but the resident was cleared by medical personnel and died after returning to Spring Meadows. This information alone will be extraordinarily prejudicial to the Defendant, a nursing home. Even ignoring the certain undue delay and waste of time this trial-within-a-trial will require, the extreme danger of unfair prejudice substantially outweighs any relevance this evidence may have.

## Motion in Limine #2

Plaintiff's cited cases in her Response are distinguishable from this action. Further, both her argument and the cited cases as presented are inconsistent with Sixth Circuit precedent

2

governing "me too" evidence.

As the Sixth Circuit has recognized, whether "me too" or "other acts" evidence is relevant depends, among other things, on how closely related the evidence is to the plaintiff's circumstances and theory of the case. See Griffin v. Finkbeiner, 689 F.3d 584, 598 (6th Cir. 2012). In Bandera v. City of Quincy, 344 F.3d 47 (1st Cir. 2003), the evidence at issue was much more closely related to the plaintiff there than the proposed evidence is to the Plaintiff here. In Bandera, a sexual harassment case filed by a female city employee, the plaintiff presented testimony from another female employee in the same department who reported to the same supervisors. See 344 F.3d at 53. The plaintiff was alleging that she experienced sexual harassment, had reported it to her supervisors, and that her complaints were ignored while the improper conduct was tolerated. See id. at 49. The other female employee testified in the plaintiff's trial that she suffered similar harassment and reported it to the same supervisor and that her complaints were ignored. Id. at 54. The First Circuit found this testimony relevant to show liability on the part of the supervisory officers and to show the city's pattern of tolerating harassment. See id. Importantly, the me too evidence in Bandera was very specific and was very closely related in both time and substance to the claims of the plaintiff. Further, its nature was very different from the testimony the Plaintiff seeks to elicit here. The testimony the Plaintiff seeks to elicit here will concern subjective feelings as to differences in treatment whereas the testimony in Bandera concerned specific instances where harassment was reported to a supervisor.

In Minshall v. McGraw Hill Broad. Co., while me too evidence was presented at trial, the admissibility of the evidence was not at issue on appeal and there is no indication that the

3

defendant in that case ever objected to its admissibility. See 323 F.3d 1273, 1280 (10th Cir. 2003). Instead, the Tenth Circuit merely included this evidence in its recitation of the evidence presented at trial as part of its review of the trial court's denial of the defendant's motion for judgment as a matter of law. See id. Therefore, Minshall has no bearing on the issues raised in Defendant's Motion in Limine #2.

Finally, Reeves v. Sanderson Plumbing Prods., 530 U.S. 133 (2000), is even less relevant to the issues raised in Defendant's Motion in Limine #2 as it does not involve me too or other acts evidence at all. Instead, in Reeves, an age discrimination case, the testimony at issue was presented by a younger co-worker of the plaintiff and consisted of that co-worker's opinion that a supervisor treated him and the plaintiff differently. See id. at 151.

Jones v. St. Jude Med. S.C., Inc. provides a helpful summary of the Sixth Circuit's position on "me too" evidence:

> The Sixth Circuit has held that "me too" evidence, which is defined as claims by a plaintiff's co-workers that they too were discriminated against, is unwelcome because it is at best only slightly relevant and is always highly prejudicial to the defendant. "Me too" evidence is typically inadmissible under Rule 403 of the Federal Rules of Evidence because it prejudices the defendant by embellishing the plaintiff's own evidence of alleged discrimination and typically confusing the issue of whether the plaintiff, and not others, was discriminated against. The only exception is where the plaintiff can show that her "me too" evidence is logically and reasonably tied to her specific adverse employment actions because the same actors, reasons, and circumstances were involved.

823 F. Supp. 2d 699, 734 (S.D. Ohio 2011) (internal citations omitted). The plaintiff in Jones, in order to substantiate her own race discrimination claims, sought to introduce testimony from two African-American co-workers who claimed that they were discriminated against when they suffered adverse employment decisions. See id. After summarizing Sixth Circuit case law on the issue, the Jones court ruled that evidence concerning these two co-workers was inadmissible

4

and explained, "The opinions and beliefs of Hudson and Major are just that, subjective beliefs that are irrelevant and highly prejudicial, and not evidence of pretext." See id. at 734—35. Here, Plaintiff stated in her Response to this Motion in Limine that these witnesses would testify as to their claims that they have been treated more severely than white employees. D.E. 51 at 3. This tactic is no different from that of the plaintiff in Jones. The opinions and beliefs of these witnesses identified by the Plaintiff are likewise merely "subjective beliefs that are irrelevant and highly prejudicial, and not evidence of pretext." C.f. Jones, 823 F. Supp. 2d at 734—35.

**Motion in Limine #4**

There is no need for the Plaintiff to use the spreadsheet at issue to show the race and/or position of employees not present for trial. The information can easily be obtained through examination of witnesses already identified by the parties, including the Plaintiff herself, without showing the jury the chart with all of its extraneous and irrelevant information.

Respectfully submitted,

BATSON NOLAN PLC

By: /s/ Kathryn W. Olita
    Kathryn W. Olita, BPR No. 023075
    Erik Fuqua, BPR No. 029972
    121 South Third Street
    Clarksville, Tennessee 37040
    (931) 647-1501

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing has been delivered to the following persons via the Court's electronic filing system or other appropriate means:

  Debra A. Wall
  133 Franklin Street
  Clarksville, TN 37040
  *Attorney for Plaintiff*

  and

  Marvin E. Aspen
  United States District Court Judge
  219 South Dearborn Street
  Chicago, IL 60604
  Telecopier: 312-554-8515

on this __5th__ day of __April__, 2013.

          BATSON NOLAN

          By: /s/ Kathryn W. Olita

6

Case 3:11-cv-01216   Document 68   Filed 04/29/13   Page 6 of 6 PageID #: 889